# Smith *v.* Irvington Land Co.

### *Bill to Quiet Title.*

(Decided December 17, 1914.   67 South. 250.)

1. *Quieting Title; Bill; Right to Maintain; Agreement.*—An agreement of counsel that plaintiff was in the actual possession of the land at the time of filing his bill to quiet the title is a sufficient showing to warrant the maintenance of the bill under section 5443, Code 1907.

2. *Same.*—A bill to quiet title cannot be defeated because another claims the land, as the existence of an adverse claim is an essential to the maintenance of the bill.

3. *Same; Burden of Proof.*—In a bill to quiet title, plaintiff in the peaceable possession of land need not prove his title; but those asserting adverse interest must establish theirs.

4. *Same; Evidence.*—Evidence of a former proceeding between other parties not in privity with complainant to quiet title to the land, is wholly immaterial and irrelevant, being res inter alios acta.

[Smith v. Irvington Land Co.]

APPEAL from Mobile Chancery Court.

Heard before Hon. STEWART BROOKS, Special Chancellor.

Bill by G. Hardy Smith, pro ami, against the Irvington Land Company, to quiet title to land. Decree for respondent, and complainant appeals. Reversed and rendered.

The following is the agreed statement of facts, dated October 18, 1913:

(1) That the complainant purchased the lands described in the bill of complaint at a sale by the register in chancery of this court, had under a decree of said court in a cause therein then pending, and received from said register a deed of and to all of the right, title, and interest of all the parties to said cause in and to said lands; that the complainant entered upon and took possession of said lands, under said register's deed, and that, at the time of said entry and taking possession, said entry was peaceable; that the complainant has remained in actual and peaceable possession of said lands since the date of said entry, and that said date was shortly prior to the filing of the bill of complaint in this cause, not being over one month before such filing; that at the time of said purchase and of said entry the complainant knew of the claim to said lands by the respondent, and that said claim was adverse to the claim of the parties sold by the register as aforesaid; that the complainant took possession of said lands, intending to file this bill of complaint and of testing the validity of the respective adverse claims to said lands.

(2) That at the time of the filing of said bill of complaint there was not pending any suit, at law or in equity, in which the title to said lands, either of the complainant or of the respondent, was in any wise in-

volved, and that there is now pending no such suit save this suit alone.

(3) It is further agreed that these lands were duly patented to Robert B. S. Hargis by the United States government prior to the filing of said bill of complaint by Catherine Bancroft, hereinafter mentioned.

(4) That Jonathan P. May conveyed the land to Wm. Otis by warranty deed dated September 20, 1873, and Wm. Otis devised it with other property to Charles M. Bancroft by will duly admitted to probate in Mobile county March 19, 1891. Charles M. Bancroft died, leaving a will which was duly admitted to probate in Mobile county October 26, 1895, which contained the following provisions:

"Item 2. I hereby will, devise and bequeath all my property of every nature, character and kind to my wife, Catherine Bancroft, for and during the term of her natural life, for her to manage, control and use for the benefit of herself and our children, including my daughter Cora, by my first wife, so long as they shall live together as one family, and if it should happen that the rents, income and profits of my estate should become insufficient to provide my said wife and children with a comfortable support and properly educate my minor children, then it is my will, and I hereby give my wife full power and authority to use and appropriate so much of the corpus of my estate as may be necessary for that purpose."

"Item 6. It is my will and I hereby give my wife, Catherine Bancroft, full power and authority to sell and convey any property of my estate and reinvest the proceeds in such other property as in her judgment would be to the interest of herself and my children, taking the title to such property as she may so purchase in her own name in trust for herself during her natural life

and upon her death, for my children in equal shares and with power to sell such property purchased by her, and to reinvest the proceeds and so on."

Catherine O. Bancroft conveyed the land by statutory warranty deed to Gerhardt C. Mars, deed dated November 24, 1903, recorded January 21, 1904. Gerhardt C. Mars conveyed it to the Irvington Land Company by warranty deed dated March 14, 1913. Catherine O. Bancroft is still living. C. C. Kauffman conveyed it to Ferdinand Kirchner by statutory warranty deed dated September 2, 1887. Ferdinand Kirchner conveyed it to Agnes W. Kauffman by quitclaim deed dated September 2, 1887. Earl Kauffman, Roy Kauffman, Alger Kauffman, Claude Kauffman, and Carrie Grady Price, heirs at law of Agnes W. Kauffman, deceased, conveyed it to Peter J. Brown by quitclaim deed dated September 20, 1905. Peter J. Brown conveyed it to the Century Realty Company by quitclaim deed dated October 16, 1905. Century Realty Company conveyed it to Peter B. Nelson by warranty deed dated April 9, 1906. Peter B. Nelson conveyed it to Southern Timber & Colonization Company by statutory warranty deed dated January 5, 1909. Southern Timber & Colonization Company conveyed it to Irvington Land Company by quitclaim deed dated April 13, 1912. That before Catherine O. Bancroft conveyed it to Gerhardt C. Mars, she filed a bill in the chancery court of Mobile county, being No. 7476, against Robert B. S. Hargis, or his heirs at law, to quiet the title against them, and on October 22, 1903, she obtained a decree in said cause quieting title to said land.

(5) Either party may introduce either the originals or certified copies of any of the conveyances under which they claim, and also any other evidence material to the issues in the cause.

[Smith v. Irvington Land Co.]

GREGORY L. & H. T. SMITH, and JAMES H. KIRKPAT-
RICK, for apellant.

ERVIN & MCALEER, for appellee.

MAYFIELD, J.—This was a statutory bill to quiet
and determine title to land. The bill contained the stat-
utory requirements as to averments, and sought to have
the respondent's title to the land in question deter-
mined, and the complainant's quieted, so far as the re-
spondent's claim was concerned. There was no cross-
bill requiring the complainant to establish his title or
claim; but the answer did seek to show and establish
the respondent's claim of title to the land in question.
The respondent sought no affirmative relief, as it might
have done.—Code, § 5445, and annotations thereto.

(1-3) The case was submitted on bill, answer, and
proof, including an agreement of counsel as to certain
facts upon which the equity of the bill depended. The
special chancellor who heard the cause dismissed the
bill, on the ground that complainant had not shown
such a "peaceable possession" of the lands as the stat-
ute (section 5443 of the Code) requires to maintain the
bill. In this there was error. The agreement of coun-
sel fully and expressly supplied this proof, and of course
was binding on the parties on this trial. In fact, we
find no proof of any actual possession at the time of the
filing of the bill, except that of complainant. It is true
that respondent was claiming title to the land, but had
no actual possession. The fact that complainant knew
of this claim was no impediment to his filing this bill.
The bill was filed for the very purpose of testing the
validity of this claim of title. In fact, there would be
no equity in the bill unless the defendant or some other
person was denying or disputing complainant's title.

and was claiming or asserting title or right to the lands. It is only in such cases that the statute authorizes the filing of the bill. It is not the fact that others, or the respondent, is claiming the land, that defeats the bill; it is only the fact that they are in possession, or that there is a scrambling possession, which defeats the bill. It is not necessary for the plaintiff, in a case like this, to prove his title, further than to prove his peacable possession; but the bill is to test the validity of the respondent's title, and the burden is on the respondent to prove his title.—*Newell v. Manley,* 173 Ala. 207, 55 South. 495; *Vaughan v. Palmore,* 176 Ala. 72, 57 South. 488. The respondent in this case failed to show any valid paper title, and failed to show any possession which had ripened into title, against this complainant, and, of course, the respondent could not succeed in this suit.

(4) The former proceeding between other parties to quiet title to these lands was wholly irrelevant and immaterial. It was res inter alios acta. The complainant or his privies in title were not parties to the proceeding, and, of course, could not be bound by such a proceeding.

It therefore follows that the special chancellor erred in dismissing the bill, and that he should have granted the relief as prayed in the bill, and as is provided for in the statute. The decree of the lower court is accordingly reversed, and one will be here renderd in accordanc with the prayer of the bill.

Reversed and rendered.

ANDERSON, C. J., and SOMERVILLE and GARDNER, JJ., concur.